## UNITED STATES DISTRICT COURT
## NEW JERSEY

PATRICK JEAN-LOUIS and    :
VICAME LAFONTANT,    : Civil Action No.
           Plaintiffs,    :
      vs.    :
   :
   :
ROUTE 22 AUTO SALES INC.;    : **JURY TRIAL DEMANDED**
CAPITAL ONE NATIONAL    :
ASSOC.;    :
SANTANDER CONSUMER USA, INC.,    :
          Defendants.    :

## COMPLAINT – CLASS ACTION

### I.    Jurisdiction and Venue

1.    Jurisdiction arises under 15 U.S.C. §1640(e), 1691e(e) for claims under the Equal Credit Opportunity Act, 28 U.S.C. §§ 1331, 1337(a), together with the pendent jurisdiction of the court.  Supplemental jurisdiction over Plaintiffs' state law claims is granted by 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2.    Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

### II.    Parties

3.    Plaintiffs, PATRICK JEAN-LOUIS and VICAME LAFONTANT, are adult individuals, married and residing at 451 Cherry St., Apt. E5, Elizabeth NJ 07208.

3.    Defendant ROUTE 22 AUTO SALES INC. ("ROUTE 22"), is a corporation licensed to do business in the State of New Jersey and having a principal place of business located at 109 Route 22 Toyota, Elizabeth NJ 07205.

4.    Defendant, CAPITAL ONE NATIONAL ASSOCIATION (hereinafter "CAPITAL ONE") is a corporation licensed to do business in the State of New Jersey, regularly

conducting business therein, and having a principal place of business at 3905 Dallas Parkway, Plano, TX 75093, and having a registered agent for service being Corporation Service Company, Princeton South Corporate Ctr Ste 160, 100 Charles Ewing Blvd, Ewing, New Jersey 08628. At all times relevant herein, CAPITAL ONE conducted business in the State of New Jersey buying retail sale installment contracts (or considering whether to buy) from approved motor vehicle dealers.

5.      Defendant, SANTANDER CONSUMER USA, INC. ("SANTANDER") is a Texas corporation licensed to do business in the State of New Jersey, and has a registered agent for service being The Corporation Trust Company, 820 Bear Tavern Road,West Trenton New Jersey, 08628 . At all times relevant herein, SANTANDER conducted business in the State of New Jersey and throughout the United States, in its name and under the trade or fictitious name of "Capital One Auto Finance", buying retail sale installment contracts (or considering whether to buy) from approved motor vehicle dealers.

6.      Not named as parties to this complaint are the other UNKNOWN DEALERS AND AGENTS of CAPITAL ONE and SANTANDER who arrange for CAPITAL ONE and SANTANDER to acquire loans from others as part of CAPITAL ONE's and SANTANDER's continuation of credit to the putative class members.  These UNKNOWN DEALERS AND AGENTS are known to CAPITAL ONE and SANTANDER and facilitate the transactions at issue in this case in the same manner that ROUTE 22 performs.

**III.    <u>Factual Allegations</u>**

7.      At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted entirely within the scope of their actual and apparent authority and within the course of their employment.

2

8.     On or about February 27, 2019, Plaintiffs visited the ROUTE 22's sales dealership located at 109 Route 22 Toyota, Elizabeth NJ 07205 to look for a used vehicle.

9.     At the dealership, after a five (5) hour process where ROUTE 22's salesperson kept plaintiffs' drivers licenses (forcing plaintiff JEAN-LOUIS to leave to pick up plaintiffs' children), plaintiffs signed a retail installment contract ("RISC" attached as Ex. "A") to purchase a pre-owned 2016 Toyota Highlander, bearing Vehicle Identification #5TDBKRFH2GS259293 (hereinafter "the Subject Vehicle").

10.    The RISC described ROUTE 22 as "seller-creditor".

11.    The total down payment required by the contract was $4,000.00.

12.    Plaintiffs returned the next day, i.e. February 28, 2019, with proof that they had $2,000 towards the down payment, bank statements, and all other supporting financial information requested by ROUTE 22; all of this information completed their credit application to ROUTE 22 for the purpose of acquiring credit from it to acquire a new family car and ROUTE 22 approved the transaction.

13.    Plaintiffs returned the day thereafter, i.e. March 1, 2019, and paid the balance due of $2,000.00 deposit towards the $4,000.00 down payment for purchase of the vehicle stated under the RISC.

14.    The first payment on the loan was due by plaintiffs on April 1, 2019.

15.    After signing the RISC, plaintiff left the dealership with the subject vehicle in reliance upon ROUTE 22's representations (misrepresentations) that they had been approved for an auto loan and that ROUTE 22 had approved their credit application for that loan.

16.    Upon information and belief, on or about February 28, 2019, ROUTE 22 submitted plaintiffs' credit application to SANTANDER to sell onto the secondary market for

auto loans.

17.     Upon information and belief, on or about March 2, 2019, ROUTE 22 submitted plaintiffs' credit application to CAPITAL ONE to sell onto the secondary market for auto loans.

18.     Approximately one month later, even though ROUTE 22 had approved their application for credit and accepted their deposit, ROUTE 22 contacted plaintiffs to inform them that "banks" had rejected plaintiffs for financing to purchase the subject vehicle and demanded that plaintiffs return the vehicle to the dealership accordingly.

19.     In reliance to the demands made by ROUTE 22, on or about March 25, 2019, plaintiffs returned to the Defendant dealership and tendered the vehicle as defendant instructed.

20.     While there, Plaintiffs requested their down payment back from Defendant who replied that "We do not give refunds."

21.     Thereafter on or about April 8, ROUTE 22, through its authorized agent "Aaron," called plaintiffs by telephone and requested that they provide their bank statements again for the purpose of getting plaintiffs financing for the vehicle's purchase under the RISC.

22.     Plaintiffs, not wanting to do further business with Defendant any longer, due to its fraudulent, unfair, deceptive, and/or abusive bait and switch sales tactics and wanting only return of their down payment, declined to produce the requested financial documents again to Defendant.

23.     As of this filing, Defendant refuses to refund to plaintiffs their $4,000 deposit despite ROUTE 22's breach of the RISC.

24.     On or about April 28, 2019, CAPITAL ONE sent plaintiffs an adverse action letter advising that it declined to purchase the RISC and denied plaintiffs credit thereby.

25.     ROUTE 22, by its aforesaid actions, constructively repossessed the vehicle from plaintiffs.

26.     Plaintiffs have been and will continue to be financially damaged due to defendant's actions in stealing their down payment and the subject vehicle from them through its unfair, deceptive, and otherwise abusive sales practices.

27.     The established business practices described above and below were part of a systematic business practice called "spot delivery" intended to secure for ROUTE 22 unearned dealer profits.

28.      "Spot delivery" practices described above and below are unlawful, deceptive, misleading, and fraudulent in the State of New Jersey where the sale or delivery is the basis upon any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission. N.J.S.A. 56:8-2.

29.     The established "spot delivery" practices described above and below commenced prior to the execution of any agreement, were designed and intended to induce the Plaintiffs to enter into an agreement, allow ROUTE 22 to retained unearned profits for its breach of the RISC, and persisted after the apparent agreement was consummated.

30.     During all times relevant ROUTE 22 deceived the Plaintiffs into believing ROUTE 22's actions were lawful, and/or concealed their actions' unlawful nature.  Plaintiffs' belief, reliance, and trust in ROUTE 22 was reasonable because no reasonable person would believe that the Defendant would act illegally, unfairly, abusively, or abusively in contravention of its duties to the Plaintiffs.  In addition, ROUTE 22, by and through its authorized agents, omitted the disclosure

of material information to the Plaintiffs with the intent, based on its statements to them, to defraud or otherwise act unfairly, deceptively, or abusively to trick the Plaintiffs' out of their deposit.

31.     At all times relevant, the Plaintiffs relied on ROUTE 22's apparent and claimed experience, sophistication and expertise in selling and/or financing motor vehicles and allowed the Vehicle to be repossessed.

32.     ROUTE 22 held managerial and/or supervisory control over all of its agents and all of the policies and procedures involved and/or at issue in this matter.

33.     ROUTE 22 directly and personally participated in the development, adoption and/or execution of the policies and practices at issue herein.

## IV.    Class Action Allegations

34.     The Plaintiffs bring certain claims, *infra*., on behalf of two classes of similarly situated persons related to Defendants CAPITAL ONE and SANTANDER under Fed.R.Civ.P. 23.

35.     The Plaintiffs propose, as the definition of the CAPITAL ONE CLASS, that it be defined as follows:

> All persons in the United States who (i) applied directly or indirectly for continuation of auto financing credit from CAPITAL ONE in the five-year period before the commencement of this action either directly or through a third party, including ROUTE 22, and (ii) were not given notice by CAPITAL ONE within thirty (30) days of receipt of the application regarding the action taken on the application.

36.     The Plaintiffs propose, as the definition of the SANTANDER CLASS, that it be defined as follows:

> All persons in the United States who (i) applied directly or indirectly for continuation of auto financing credit from SANTANDER in the five-year period before the commencement of this action either directly or through a third party,

including ROUTE 22, and (ii) were not given notice by SANTANDER within thirty (30) days of receipt of the application regarding the action taken on the application.

37.     Named Plaintiffs do not know the exact size or identities of either the CAPITAL ONE CLASS or the SANTANDER CLASS, since most of the information is in the exclusive control of Defendants.  Certain information may be reported by the Defendants to various states pursuant to state law and may also be part of the public records.  Named Plaintiffs believe that based upon public reporting by CAPITAL ONE and SANTANDER and their affiliates, that the CAPITAL ONE CLASS or the SANTANDER CLASS each encompass many hundreds of individuals and whose identities can be readily ascertained from their own records and books as well as public records.  Therefore, the proposed CAPITAL ONE CLASS or the SANTANDER CLASS are so numerous that joinder of all members of each is impracticable.

38.      In addition, the members of the CAPITAL ONE CLASS or the SANTANDER CLASS are capable of being identified without difficult managerial or administrative problems. CAPITAL ONE and SANTANDER each maintain electronic records that track information about borrowers, their loans, and any correspondence sent to borrowers to enable it to identify particular categories of borrowers from its electronic systems.

39.     There are questions of law and fact common to the CAPITAL ONE CLASS or the SANTANDER CLASS which predominate over any questions affecting only individual members of the putative classes and, in fact, the wrongs alleged against CAPITAL ONE and SANTANDER by the CAPITAL ONE CLASS or the SANTANDER CLASS members and the remedies sought by the CAPITAL ONE CLASS or the SANTANDER CLASS members against CAPITAL ONE and SANTANDER are identical.

7

40.     The common issues related to the CAPITAL ONE CLASS or the SANTANDER CLASS members include, but are certainly not limited to whether CAPITAL ONE and SANTANDER maintain practices and procedures to timely disclose adverse action upon a consumer's credit application within the time period required by ECOA.

41.     There are also questions of law and fact that are common to the CAPITAL ONE CLASS, and predominate over any questions affecting only individual members of the CAPITAL ONE CLASS.  These questions include, but are not limited to the following:

a.  the nature, scope and operation of CAPITAL ONE's obligations to consumer borrowers under its auto finance business which involves purchases of auto loans on the secondary market for the purpose of continuing the credit arrangements for borrowers related to ECOA;

b.  whether CAPITAL ONE's failure to provide a timely, written acknowledgement of its decision whether to acquire borrower's credit accounts and continue the credit extended of the members of the CAPITAL ONE CLASS within thirty days of an application is a violation of CAPITAL ONE's duty of good faith and fair dealing to the CAPITAL ONE CLASS;

c.  whether CAPITAL ONE's conduct violates the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 e*t seq*. and its implementing regulations;

d.  whether there are more than 50 borrowers who are members of the CAPITAL ONE CLASS;

e.  whether CAPITAL ONE should be enjoined from continuing to access the credit information for consumer borrowers, directly or indirectly, concerning CAPITAL ONE CLASS members without providing timely acknowledgement of

8

its decision related to whether or not to continue the credit relationship;

f.   whether CAPITAL ONE's violation of ECOA entitles the CAPITAL ONE CLASS to statutory damages and nominal actual damages related to the transmission of untimely notices of its decision to continue the credit of the class borrowers; and

g.   whether Class Counsel should be entitled to the attorney fees, litigation costs, and court costs allowed and claimed in this civil action.

42.   There are also questions of law and fact that are common to the SANTANDER CLASS, and predominate over any questions affecting only individual members of the SANTANDER CLASS.  These questions include, but are not limited to the following:

a.   the nature, scope and operation of SANTANDER's obligations to consumer borrowers under its auto finance business that purchases auto loans on the secondary market for the purpose of continuing the credit arrangements for borrowers related to ECOA;

b.   whether SANTANDER's failure to provide a timely, written acknowledgement of its decision whether to acquire borrower's credit accounts and continue the credit extended of the members of the SANTANDER CLASS within thirty days of an application is a violation of SANTANDER's duty of good faith and fair dealing to the ECOA Class;

c.   whether SANTANDER's conduct violates ECOA and its implementing regulations;

d.   whether there are more than 50 borrowers who are members of the SANTANDER CLASS;

9

e.  whether SANTANDER should be enjoined from continuing to access the credit information for consumer borrowers, directly or indirectly, concerning SANTANDER CLASS members without providing timely acknowledgement of its decision related to whether or not to continue the credit relationship;

f.  whether SANTANDER's violation of ECOA entitles the SANTANDER CLASS to statutory damages and nominal actual damages related to the transmission of untimely notices of its decision to continue the credit of the class borrowers; and

g.  whether Class Counsel should be entitled to the attorney fees, litigation costs, and court costs allowed and claimed in this civil action.

43.  Plaintiffs' claims are typical and the same or identical for each of the member of the SANTANDER CLASS and CAPITAL ONE CLASS and will be based on the same legal and factual theories identified *supra*.

44.  CAPITAL ONE and SANTANDER's defenses (which defenses are denied) would be typical and the same or identical for each of the member of the CAPITAL ONE CLASS or the SANTANDER CLASS and will be based on the same legal and factual theories.

45.  The Plaintiffs will also fairly and adequately represent and protect the interests of the CAPITAL ONE CLASS or the SANTANDER CLASS members.  Plaintiffs have retained counsel experienced in consumer class actions including actions involving unlawful collection and lending practices.  Plaintiffs do not have any interests which might cause them not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the Class.

46.  Certification of the Class under Fed. R. Civ.P. 23(a) and 23(b) and 15 U.S.C. § 1691e(c) for the injunctive and declaratory relief sought and for the damages claims in that

common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of claims by the Class members, and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

47.     Plaintiffs' claims are typical of the claims of the Class members.

48.     Plaintiffs will fairly and adequately protect the interests of all Class members in the prosecution of this action. The Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the CAPITAL ONE CLASS or the SANTANDER CLASS they seek to represent. The Plaintiffs (i) feel that they have been wronged, (ii) wish to obtain redress of the wrong, and (iii) want Defendants stopped from untimely compliance with decision on adverse applications.

49.     The Class members have suffered damages, losses, and harm similar those sustained by the Plaintiffs and described above. The Class members and Plaintiffs are also entitled to statutory, punitive damages under ECOA.

**V.     Causes of Action**

**COUNT I – VIOLATION OF ECOA**
**(Plaintiffs v. Defendant ROUTE 22 (INDIVIDUAL CLAIM))**

50.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint.

51.     This Court has jurisdiction to decide claims brought under ECOA pursuant to 15 USC 1691e(f).

52.     Each Plaintiff is an "applicant" as the term is defined in the ECOA, 15 USC §1691a(b).

53.     Defendant ROUTE 22 is a "creditor" as the term is defined in the ECOA, 15 USC

11

§1691a(e).

54.     Plaintiffs completed a credit application and/or one was completed on their behalf and otherwise applied to Defendant ROUTE 22 for credit in connection with their purchase of the subject vehicle.

55.     Under the provisions of the ECOA, Defendant ROUTE 22 was required to give written notice of their decision on that credit application to Plaintiffs within 30 days of receipt.

56.     In the event that such credit was approved, the provisions of ECOA permitted Defendant to provide that notice by means other than written communication, 15 USC §1691(d)(1) and (2).

57.     Defendant ROUTE 22 informed Plaintiffs by offering the terms of RISC which plaintiffs accepted by signing that they had been approved for credit in the transaction to purchase the Subject Vehicle.

58.     At the time that Defendant ROUTE 22 informed Plaintiffs that they had been approved for credit, Defendant ROUTE 22 knew or had reason to know that it would not actually extend credit to Plaintiffs for the vehicle unless (i) it could assign or sell the RISC to a third party bank or other financial entity on the auto finance secondary market that continues the credit arrangement on the terms *set* by ROUTE 22 therein and (ii) it knew or should have known that the RISC could not be assigned on terms agreed to by Plaintiffs.

59.     Defendant later informed Plaintiffs by their constructive repossession of the Subject Vehicle that Defendant was denying plaintiff credit to purchase the subject vehicle, effectively terminating the transaction.

60.     The denial and revocation of credit, and the vehicle repossession by Defendant constituted an "adverse action" as the phrase is defined in the ECOA, 15 USC §1691(d).

61.     After taking adverse action on Plaintiff's credit application for the subject vehicle, Defendants were required to provide written notice of that adverse action within 30 days of taking that action, 15 USC §1691d.

62.     Defendant ROUTE 22 failed or refused to provide that written notice to Plaintiffs in violation of 15 USC §1691d.

63.     Defendant ROUTE 22, at all times, was required to maintain such records or other data relating to such loans as may be necessary to evidence compliance with ECOA or to enforce any action pursuant to the authority under the Act, 15 USC §1691b.

### COUNT II – VIOLATION OF ECOA
**(Plaintiffs v. Defendant CAPITAL ONE (CLASS CLAIM on behalf of the CAPITAL ONE CLASS)**

64.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint.

65.     Each Plaintiff and all members of the CAPITAL ONE CLASS are "applicants" as the term is defined in the ECOA, 15 USC §1691a(b).

66.     In relation to the Plaintiffs and each member of the CAPITAL ONE CLASS, CAPITAL ONE is a "creditor" as the term is defined in the ECOA, 15 USC §1691a(e). CAPITAL ONE regularly extends credit or continues credit it acquires on the secondary, auto finance market by and through ROUTE 22 and other UNKNOWN DEALERS AND AGENTS.

67.     15 U.S.C §1691(d)(1) provides that "within thirty days…after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."

68.     The accompanying Regulation B, issued by the Board of Governors of the Federal Reserve System pursuant to ECOA, further provides: "A creditor shall notify an applicant of

action taken within…30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R §202.9(a)(1)(i).

69.    The term "credit" means the right granted by a debtor to defer payment of a debt or to incur debts and defer its payment…and defer payment thereof. 15 U.S.C. § 1691a(d); 12 C.F.R. §202.2(j).

70.    The Plaintiffs' RISC and similar agreements entered into by the CAPITAL ONE CLASS members qualify by their terms as applications for "credit" as defined by 15 U.S.C. § 1691a(d) and 12 C.F.R. §202.2(j).

71.    Plaintiffs and each member of the CAPITAL ONE CLASS completed a credit application and/or one was completed on their behalf by Defendant ROUTE 22 or other UNKNOWN DEALERS AND AGENTS of CAPITAL ONE in connection with their purchase of their vehicles.

72.    ROUTE 22 submitted plaintiffs' credit application to CAPITAL ONE on or about March 2, 2019 for the purpose of continuing the Plaintiffs' credit on the secondary market through CAPITAL ONE.  ROUTE 22 and UNKNOWN DEALERS AND AGENTS also submitted the CAPITAL ONE CLASS member applications to CAPITAL ONE within the five years before the commencement of this action for the purpose of continuing the CAPITAL ONE CLASS members' credit on the secondary market.

73.    The untimely denial of credit in CAPITAL ONE's April 28, 2019 letter described herein related to the Plaintiffs constituted an "adverse action" as the phrase is defined in the ECOA, 15 USC §1691(d).  CAPITAL ONE also sent similar untimely, credit denial letters to the CAPITAL ONE CLASS members which also constituted an "adverse action" as the phrase is defined in the ECOA, 15 USC §1691(d).

14

74.    In failing to timely notify the Plaintiffs and the CAPITAL ONE CLASS members' applications for credit in a manner required by the federal and state regulations, CAPITAL ONE effectively denied the ECOA Class members credit. *Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549, at *9 (D. Md. Jan. 22, 2013)("Failing to act on an application for credit is a *de facto* denial").

75.    The above failure of CAPITAL ONE to notify and acknowledge in writing to the CAPITAL ONE CLASS members and Plaintiffs within thirty days from receipt of their completed application for credit as mandated by 15 U.S.C §1691(d)(1) and 12 C.F.R §202.9(a)(1)(i) was a substantive violation of ECOA.

76.    Under the provisions of the ECOA, CAPITAL ONE was required to give notice to Plaintiffs and the CAPITAL ONE CLASS members of its decision on their credit applications within 30 days of receipt, Reg. B § 1002.9(g).

77.    CAPITAL ONE failed or refused to provide timely written notice to Plaintiffs and the CAPITAL ONE CLASS members within thirty (30) days in violation of 15 USC §1691d.  As a result CAPITAL ONE acted in bad faith.

78.    CAPITAL ONE, at all times relevant and material to this action, was and continues to be required to maintain such records or other data relating to such loans of the Plaintiffs and CAPITAL ONE CLASS members as may be necessary to evidence compliance with ECOA or to enforce any action pursuant to the authority under the Act, 15 USC §1691b.

79.    As a result of the above ECOA violations, the Plaintiffs and CAPITAL ONE CLASS has suffered substantial actual damages in the following:

  a.  the loss of the CAPITAL ONE CLASS' rights to explain or quickly rectify and address any errors or problems in their applications for credit;

    b.   the loss of the credit itself; and

    c.   frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

80.    As a result of the above alleged ECOA violations, CAPITAL ONE is liable to the Plaintiffs and the CAPITAL ONE CLASS for actual damages pursuant to 15 U.S.C. §1691(e)(a), for punitive damages against CAPITAL ONE pursuant to 15 U.S.C. §1691e(b) and for attorney's fees and costs pursuant to 15 U.S.C. §1691(e)(d) and 12 C.F.R. §202.16(b).

<u>**COUNT III – VIOLATION OF ECOA**</u>
**(Plaintiffs v. Defendant SANTANDER (CLASS CLAIM on behalf of the SANTANDER CLASS)**

81.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint.

82.    Each Plaintiff and all members of the SANTANDER CLASS are "applicants" as the term is defined in the ECOA, 15 USC §1691a(b).

83.    In relation to the Plaintiffs and each member of the SANTANDER CLASS, SANTANDER is a "creditor" as the term is defined in the ECOA, 15 USC §1691a(e). SANTANDER regularly extends credit or continues credit it acquires on the secondary, auto finance market by and through ROUTE 22 and other UNKNOWN DEALERS AND AGENTS.

84.    15 U.S.C §1691(d)(1) provides that "within thirty days…after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."

85.    The accompanying Regulation B, issued by the Board of Governors of the Federal Reserve System pursuant to ECOA, further provides: "A creditor shall notify an applicant of action taken within…30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R §202.9(a)(1)(i).

86.     The term "credit" means the right granted by a debtor to defer payment of a debt or to incur debts and defer its payment…and defer payment thereof. 15 U.S.C. § 1691a(d); 12 C.F.R. §202.2(j).

87.      The Plaintiffs' RISC and similar agreements entered into by the SANTANDER CLASS members qualify by their terms as applications for "credit" as defined by 15 U.S.C. § 1691a(d) and 12 C.F.R. §202.2(j).

88.     Plaintiffs and each member of the SANTANDER CLASS completed a credit application and/or one was completed on their behalf by Defendant ROUTE 22 or other UNKNOWN DEALERS AND AGENTS of SANTANDER in connection with their purchase of their vehicles.

89.     ROUTE 22 submitted plaintiffs' credit application to SANTANDER on or about March 2, 2019 for the purpose of continuing the Plaintiffs' credit on the secondary market through SANTANDER.   ROUTE 22 and UNKNOWN DEALERS AND AGENTS also submitted the SANTANDER CLASS member applications to SANTANDER within the five years before the commencement of this action for the purpose of continuing the SANTANDER CLASS members' credit on the secondary market.

90.     The denial of credit in SANTANDER's May 24, 2019 letter described herein related to the Plaintiffs constituted an "adverse action" as the phrase is defined in the ECOA, 15 USC §1691(d). SANTANDER also sent similar credit denial letters to the putative class members which also constituted an "adverse action" as the phrase is defined in the ECOA, 15 USC §1691(d).

91.     In failing to timely notify the Plaintiffs and the SANTANDER CLASS members' applications for credit in a manner required by the federal and state regulations, SANTANDER

17

effectively denied the ECOA Class members credit. *Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549, at *9.

92.     The above failure of SANTANDER to notify and acknowledge in writing to the SANTANDER CLASS members and Plaintiffs within thirty days from receipt of their completed application for credit as mandated by 15 U.S.C §1691(d)(1) and 12 C.F.R §202.9(a)(1)(i) was a substantive violation of ECOA.

93.     Under the provisions of the ECOA, SANTANDER was required to give notice to Plaintiffs and the SANTANDER CLASS members of its decision on their credit applications within 30 days of receipt, Reg. B § 1002.9(g).

94.     SANTANDER failed or refused to provide timely written notice to Plaintiffs and the SANTANDER CLASS members within thirty (30) days in violation of 15 USC §1691d.  As a result, SANTANDER acted in bad faith.

95.     CAPITAL ONE, at all times relevant and material to this action, was and continues to be required to maintain such records or other data relating to such loans of the Plaintiffs and SANTANDER CLASS members as may be necessary to evidence compliance with ECOA or to enforce any action pursuant to the authority under the Act, 15 USC §1691b.

96.     As a result of the above ECOA violations, the Plaintiffs and SANTANDER CLASS has suffered substantial actual damages in the following:

a.   the loss of the SANTANDER CLASS' rights to explain or quickly rectify and address any errors or problems in their applications for credit;

b.   the loss of the credit itself; and

c.   frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

18

97.     As a result of the above alleged ECOA violations, SANTANDER is liable to the

Plaintiffs and the SANTANDER CLASS for actual damages pursuant to 15 U.S.C. §1691(e)(a),

for punitive damages against SANTANDER pursuant to 15 U.S.C. §1691e(b) and for attorney's

fees and costs pursuant to 15 U.S.C. §1691(e)(d) and 12 C.F.R. §202.16(b).

**COUNT IV – Violations of the Consumer Fraud Act and
the Motor Vehicle Advertising Practices Regulations
Plaintiff v. Defendant ROUTE 22 (INDIVIDUAL CLAIM)**

98.     Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

99.     The Consumer Fraud Act ("CFA"), at N.J.S.A. 56:8-2, prohibits the use of "any

unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing, concealment, suppression, or omission of any material fact

with intent that others rely upon such concealment, suppression or omission, in connection with

the sale or advertisement of any merchandise."

100.     "Merchandise" includes goods and services, including motor vehicles. N.J.S.A.

56:8-1.

101.     Plaintiff is a "consumer" as defined by the CFA.

102.     Defendants are subject to the CFA. N.J.S.A. 56:8-1 *et seq.*

103.     Defendants are used motor vehicle "Dealers" as defined by the CFA at N.J.S.A.

56:8-67.

104.     Plaintiff' purchase of the vehicle is a sale of merchandise subject to the CFA.

105.     Prior to the execution of the RISC, the Defendant Route 22 and/or their agents,

including but not limited to those identified on any sales documents for Vehicle, expressly or

impliedly represented that the purchase and financing of the vehicle were final and complete

upon Plaintiff signing RISC.

19

106.    Prior to the execution of both sets of contracts, Defendants' agents, including those identified on the attached sales document, concealed the following facts from the Plaintiffs:

    a.  the Defendants would deny that financing was approved;

    b.  the Defendants would deny that the deal was final and binding upon Plaintiff signing RISC;

    c.  the Defendants were not going to lawfully transfer Title ownership.

    d.  Defendants were going to retain and refuse to return Plaintiff's $4000.00 down payment.

107.    The misrepresentations and omissions identified in the immediately preceding paragraphs were known to Defendants to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiffs, and in fact, induced them to purchase the Vehicle on the terms listed in RISC 2.

108.    The Defendants knew that the Plaintiffs had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

109.    The Plaintiffs relied on the Defendants' misrepresentations and were induced to sign RISC 2 and other documents related to which they apparently and ostensibly purchased and financed the vehicle.

110.    As a result of the aforementioned conduct, the Plaintiffs suffered the damages outlined above and below, including but not limited to:

    a)  increased purchase costs;

    b)  damaged credit rating and reputation;

    c)  deprived of the use and enjoyment of the vehicle;

    d)  incurred cost of replacement vehicles;

    e)  spent time resolving problems created by Defendants' breach;

20

f) incurred other incidental and consequential damages;

g) incurred increased interest and other expenses for financing the purchase of the vehicle.

111. The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

112. Defendants' violations of the CFA include, but are not limited to, the following:

a. Defendant's false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission to Plaintiffs that the deal was not final and binding Plaintiffs upon Plaintiff's signing of the RISC.

b. Defendant's unlawful retention of Plaintiff's $4000.00 down payment.

113. Plaintiffs would not have purchased the subject vehicle if they were aware that Defendants could unilaterally void the contract for the subject vehicle.

114. As a result of Defendants' violations of the Consumer Fraud Act, Plaintiff suffered an ascertainable loss, including without limitation:

a. $44,966.56 the total financed purchase price of the vehicle.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the putative class members respectfully pray that judgment be entered against the Defendants for the following:

A. <u>As to Defendant CAPITAL ONE (Count II):</u>

(i) The Court certify the CAPITAL ONE CLASS and appoint the Plaintiffs as

21

class representative and their counsel as Class Counsel;

(ii) The CAPITAL ONE CLASS and Plaintiffs be awarded actual damages in a sum of no less than $10 per ECOA Class Member pursuant to 15 U.S.C. §1691e(a).

(iii) Punitive Damages in the amount of $500,000 against CAPITAL ONE pursuant to 15 U.S.C. §1691e(b).

(iv) Attorney's fees and costs pursuant to 15 U.S.C. § 1691e(d).

(v)  The CAPITAL ONE CLASS members and Plaintiffs are also entitled to equitable relief pursuant to 15 U.S.C. § 1691e(c) and Fed.R.Civ.P. 23 against CAPITAL ONE and ask this Court to: (i) enter an Order declaring that CAPITAL ONE's conduct is a violation of ECOA and demonstrates unclean hands, insofar as it failed to provide timely notices to Plaintiffs and the CAPITAL ONE CLASS members of its actions on their applications for continuation of their credit within thirty day from receipt of the CAPITAL ONE CLASS members' applications for credit to continue their automobile loans; and (ii) require delivery of ECOA Complaint notices in all future instances

B.  As to Defendant SANTANDER (Count III):

(i) The Court certify the SANTANDER CLASS and appoint the Plaintiffs as class representative and their counsel as Class Counsel;

(ii) The SANTANDER CLASS and Plaintiffs be awarded actual damages in a sum of no less than $10 per ECOA Class Member pursuant to 15 U.S.C. §1691e(a).

(iii) Punitive Damages in the amount of $500,000 against SANTANDER pursuant

to 15 U.S.C. §1691e(b).

(iv) Attorney's fees and costs pursuant to 15 U.S.C. § 1691e(d).

(v)  The SANTANDER CLASS members and Plaintiffs are also entitled to equitable relief pursuant to 15 U.S.C. § 1691e(c) and Fed.R.Civ.P. 23 against SANTANDER and ask this Court to: (i) enter an Order declaring that SANTANDER's conduct is a violation of ECOA and demonstrates unclean hands, insofar as it failed to provide timely notices to Plaintiffs and the SANTANDER CLASS members of its actions on their applications for continuation of their credit within thirty day from receipt of the SANTANDER CLASS members' applications for credit to continue their automobile loans; and (ii) require delivery of ECOA Complaint notices in all future instances

C.  <u>As to Defendant Route 22 (Counts I & IV)(individual claims only):</u>

    i.  For violations of ECOA and Reg B, under 15 U.S.C. § 169le(b) under Count I:
    (1)  Actual damages in an about of no less than $40,000 per plaintiff;

    (2)  Punitive damages up to $10,000; and

    (3)  Reasonable attorney fees and costs.

    ii.  For violations of the Consumer Fraud Act (N.J.S.A.56:8-19) under Count IV:
    (1) Actual damages in an about of no less than $40,000 per plaintiff;

    (2) Treble damages;

    (3) For reasonable attorneys' fees and costs under the CFA at N.J.S.A.

      56:8-19, and all other applicable statutes;

    (4) For punitive damages; and

(5) For prejudgment interest and post-judgment interest.

D.  Such other and further relief as the Court shall deem just and proper.

## TRIAL BY JURY

115.    Plaintiffs are entitled to and hereby respectfully demand a trial by jury. US Const.

amend. 7. Fed. R. Civ. Pro. 38.

Law Office of Michael F. Niznik

Dated: 8/5/19                              *s/ Michael Niznik*
                                          Michael F. Niznik, Esq.
                                          Attorney for Plaintiff

EXHIBIT A

LAW 553-NJ-e 4/14

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number ___ BK6DE /  ___  3002    Contract Number ___ AD-3 42000107362703 / 163105861

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| PATRICK JEAN-LOUIS 451 CHERRY ST APT E5 Elizabeth, NJ 07208 UNION | VILCAME LAFONTANT 451 CHERRY ST APT E5 Elizabeth, NJ 07208 UNION | ROUTE 22 AUTO SALES, INC 109 ROUTE 22 TOYOTA HILLSIDE, NJ 07205 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| Used | 2016 | Toyota Highlander | 5TDBKRFH2GS259293 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ N/A |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 4,000.00 is |
|---|---|---|---|---|
| 19.08 % | $ 16,662.36 | $ 24,304.20 | $ 40,966.56 | $ 44,966.56 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 568.98 | Monthly beginning 04/01/2019 |
| N/A | N/A | N/A |

Or As Follows:

N/A

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.
If a payment is not received in full within ___ N/A ___ days after it is due, you will pay a late charge of $ ___ N/A ___ or ___ N/A ___ % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

**Late Charge.** If payment is not received in full within ___ 10 ___ days after it is due, you will pay a late charge of 5 % of the part of the payment that is late. If the vehicle is primarily for personal, family, or household use and the cash price is $ 10,000 or less, the charge for each late payment will be $ 10 .
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

## NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

## ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (including $ 1,695.87 sales tax)    $ 26,795.87 (1)

2 Total Downpayment =

| Trade-in N/A | N/A | | N/A | | |
|---|---|---|---|---|---|
| (Year) | (Make) | | (Model) | | |

| Gross Trade-in Allowance | | $ | N/A |
|---|---|---|---|
| Less Pay Off Made By Seller | | $ | N/A |
| Equals Net Trade In | | $ | N/A |
| + Cash | | $ | 4,000.00 |
| + Other N/A | | $ | N/A |

(if total downpayment is negative, enter "0" and see 4J below)

   $ 4,000.00 (2)

3 Unpaid Balance of Cash Price (1 minus 2)    $ 22,795.87 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf

(Seller may keep part of these amounts):

A Cost of Optional Credit Insurance Paid to Insurance Company or Companies.

| Life | $ | N/A | | |
|---|---|---|---|---|
| Disability | $ | N/A | $ | N/A |

B Other Optional Insurance Paid to Insurance Company or Companies    $ N/A

C Official Fees Paid to Government Agencies

| to N/A | for N/A | $ | N/A |
|---|---|---|---|
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |

| D Optional Gap Contract | $ | N/A |
|---|---|---|
| E Supplemental Title Fee | $ | 895.00 |
| F Vehicle Tire Fee | $ | N/A |
| G Government Taxes Not Included in Cash Price | $ | N/A |
| H Government License and/or Registration Fees | $ | N/A |
| Registration Fee | | |
| I Government Certificate of Title Fees | $ | 115.33 |

J Other Charges (Seller must identify who is paid and describe purpose)

| to N/A | for Prior Credit or Lease Balance | $ | N/A |
|---|---|---|---|
| to ROUTE 22 TOYOTA | for Documentation Fee | $ | 498.00 |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf    $ 1,508.33 (4)

5 Amount Financed (3 + 4)    $ 24,304.20 (5)

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before

N/A , Year N/A . SELLER'S INITIALS N/A

---

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term: 72 Mos.    TOYOTA

            Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X A 1/...

---

**Returned Check Charge:** You agree to pay a charge of $ 20 if any check you give us is dishonored and the law allows it.

---

insurance, you may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Check the insurance you want and sign below:

**Optional Credit Insurance**

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

| Credit Life $ | N/A |
|---|---|
| Credit Disability $ | N/A |

Insurance Company Name

N/A

Home Office Address

N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the amount financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life or credit disability insurance provides. See the policies or certificates for coverage limits and other terms and conditions. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐

| N/A | | N/A |
|---|---|---|
| Type of Insurance | | Term |

Premium $    N/A

Insurance Company Name

N/A

Home Office Address

N/A

☐

| N/A | | N/A |
|---|---|---|
| Type of Insurance | | Term |

Premium $    N/A

Insurance Company Name

N/A

Home Office Address

N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

| X B | N/A | | N/A |
|---|---|---|---|
| Buyer Signature | | | Date |

| X B | N/A | | N/A |
|---|---|---|---|
| Co-Buyer Signature | | | Date |

# OTHER IMPORTANT AGREEMENTS

## 1. FINANCE CHARGE AND PAYMENTS

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
* The vehicle and all parts or goods put on it;
* All money or goods received (proceeds) for the vehicle;
* All insurance, maintenance, service, or other contracts we finance for you; and
* All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest to the extent permitted by applicable law. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund on insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
* You do not pay any payment on time;
* You give false, incomplete, or misleading information on a credit application;
* You start a proceeding in bankruptcy or one is started against you or your property; or
* You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits. If the vehicle is primarily for personal, family, or household use and the cash price is $10,000 or less, the maximum attorney's fee you will pay will be $100 plus 10% of the excess over $500 of the amount due when we hire the attorney.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e.   How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f.   We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g.   What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle as the law allows. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4.   WARRANTIES SELLER DISCLAIMS**
**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5.   Servicing and Collection Contacts.**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**6.   Applicable Law**
Federal law and the law of the state of our address shown on page 1 of this contract apply to this contract.

**Electronic Contracting and Signature Acknowledgment.**
You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs **X C** _hf_ _____ Co-Buyer Signs **X C** _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

### NOTICE TO RETAIL BUYER

**Do not sign this contract in blank.**
**You are entitled to a copy of the contract at the time you sign.**
**Keep it to protect your legal rights.**

---

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs **X D** _Jfw_ _____ Date **03/02/2019**  Co-Buyer Signs **X D** _____ Date **03/02/2019**

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X N/A**

Seller signs **ROUTE 22 AUTO SALES, INC**   Date **03/02/2019**  By **X E** ☙   Address _____ N/A _____   Title **FINANCE**

**ILAW**  FORM NO. 553-NJ-e  Rev 4/14   U.S. PATENT NO. D482,762
©2014 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM, CONSULT YOUR OWN LEGAL COUNSEL.